UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| GILLIANA R. MILLS, | CIVIL ACTION NO. 6:19-248-KKC |
| Plaintiff, | |
| v. | ORDER AND OPINION |
| JOHNSON & JOHNSON, and CODMAN & SHURTLEFF, INC., | |
| Defendants. | |

*** *** ***

This matter is before the Court on Defendant Johnson & Johnson's motion for summary judgment. (DE 26.) For the following reasons, the Court grants Defendant's motion.

## I.      Background

## A.      Plaintiff's Surgical Implantations of Shunts and Valves

On January 7, 2011, surgeons implanted a shunt and valve into Plaintiff Gilliana R. Mills' brain to remedy Mills' recurrent memory loss and migraines. (Second Am. Compl. ¶¶ 7-8.) Mills alleges that Defendant Codman & Shurtleff, Inc. ("Codman") designed and manufactured this shunt and valve. (*Id.* ¶¶ 5, 56.)

While Mills' symptoms initially ceased, they began reemerging around July 2011. (*Id.* ¶ 10.) Because of her increasingly worsening symptoms, Mills scheduled an appointment with her surgeon in May 2018. (*Id.* ¶ 18.) Her surgeon suspected that her shunt and valve were malfunctioning. (*Id.* ¶ 19.) On July 3, 2018, Mills attended a "preoperative" visit with her surgeon to replace the shunt because its programming was "not working." (*Id.* ¶ 27.) On

July 9, 2018, Mills underwent surgery to replace the preexisting shunt and valve ("the first device") with another shunt and valve ("the second device").  (*Id.* ¶ 31.)  Mills also alleges that Codman designed and manufactured the second device.  (*Id.* ¶ 56.)

Following the implantation of the second device, Mills continued experiencing headaches, swelling, neck pain, balance issues, dizziness, and blurred vision.  (*Id.* ¶¶ 37, 41-44, 49-50, 52-53.)  Between July 9, 2018, and June 24, 2019, doctors reprogrammed Mills' second device on multiple occasions.  (*See id.* ¶¶ 38, 42, 46, 50, 54.)  On June 24, 2019, Mills underwent an additional surgery to replace the second device with a third shunt and valve.  (*Id.* ¶¶ 57-61.)

Because of the allegedly defective first and second devices, Mills asserts that she has suffered permanent physical impairment, impairment of her ability to earn wages, loss of the enjoyment of life, and pain and suffering.  (*Id.* at 20.)  According to Mills, she has accrued lost wages, medical expenses, and costs to replace the first and second devices.  (*Id.*)

## B.   Corporate History Between Defendants

Codman is a wholly-owned indirect subsidiary of Defendant Johnson & Johnson. (French Decl. ¶ 6; DE 26 at 2.)  Codman is not a department or division of Johnson & Johnson. (French Decl. ¶ 12.)   Johnson & Johnson and Codman are separate legal entities with separate corporate identities, and neither acts as a shell corporation of the other.  (*Id.* ¶¶ 10, 15.)  Johnson & Johnson and Codman maintain separate and independent by-laws, minutes, corporate records, financial records, financial statements, budgets, and bank accounts.  (*Id.* ¶ 11.)  Each entity has its own board of directors and officers.  (*Id.* ¶ 10.)  Codman is fully capitalized.  (*Id.* ¶ 11.)  Both corporations are financially independent of one another, and neither entity diverts assets away from the other for its own benefit.  (*Id.* ¶¶ 11, 14.) Johnson & Johnson does not pay for Codman's research, salaries, raw materials, or other operating

2

expenses.  (*Id.* ¶ 11.)  Codman is responsible for its own profits and losses.  (*Id.*)  Both entities own, maintain, and operate their own respective facilities.  (*Id.* ¶ 13.)

In 2017, DePuy Synthes, Inc. ("DePuy"), an indirect Johnson & Johnson subsidiary, sold Codman's neurosurgery product line to Integra LifeSciences Holding Corporation ("Integra").  (DE 26 at 2.)  That product line included the devices at issue.  (*Id.*)  Before Integra purchased the product line, Codman independently developed, manufactured, marketed, tested, inspected, distributed, and sold shunts and valves.  (*Id.* ¶ 9.)  In her declaration, Johnson & Johnson's Assistant Corporate Secretary, Tina Snyder French, states, "Integra explicitly assumed all Codman liabilities for lawsuits or claims relating to the design, manufacture, and sale of the Codman products, agreed to indemnify and hold DePuy Synthes harmless for such liabilities, and agreed to arrange for insurance for such claims."  (*Id.*; French Decl. ¶¶ 2, 7.)

## C. Procedural History

On July 25, 2019, Mills filed her initial complaint against the defendants in Kentucky state court.  (DE 26-4.)  Defendants removed the case to this Court on October 21, 2019.  (DE 1.)  Thereafter, Mills filed the Second Amended Complaint.  (DE 20.)  In her Second Amended Complaint, Mills brings state law claims for product liability, negligence, breach of express warranty, breach of implied warranty, strict liability, violation of the Kentucky Consumer Protection Act ("KCPA"), and punitive damages.  (Second Am. Compl. ¶¶ 65-110.)  Johnson & Johnson now moves for summary judgment on all claims against it.  (DE 26 at 1.)

## II. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden and must identify "those portions of the [record] which it believes demonstrate the absence of a genuine issue of

material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation and quotation marks omitted).  The Court must view all evidence, facts, and inferences in favor of the non-moving party. *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  "In order to defeat a summary judgment motion, . . . [t]he nonmoving party must provide more than a scintilla of evidence" or "sufficient evidence to permit a reasonable jury to find in that party's favor." *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007).

## III.   Analysis

### A.   Mills' Punitive Damages Claim Fails as a Matter of Law

"While [a] plaintiff may seek punitive damages, a claim for punitive damages is not a separate cause of action, but a remedy potentially available for another cause of action." *Cutter v. Ethicon, Inc.*, Civil Action No. 5:19-443-DCR, 2020 WL 109809, at *4 (E.D. Ky. Jan. 9, 2020) (citations, quotation marks, and brackets omitted).  Mills' separate punitive damages claim therefore fails as a matter of law, and the Court grants summary judgment for Johnson & Johnson as to that claim.

### B.   Johnson & Johnson Is Not Liable for Codman's Acts

Johnson & Johnson argues that it is not liable for any claims related to Codman's products because general corporate law principles dictate that a parent corporation is not liable for the acts of its subsidiaries.  (DE 26 at 6.)[1]  Mills responds that Johnson & Johnson's motion for summary judgment is premature because she has not been afforded a reasonable opportunity for discovery regarding Johnson & Johnson's role in designing, manufacturing, and selling the allegedly defective devices.  (DE 27 at 3.)

---

[1] Johnson & Johnson also argues that Kentucky product liability claims are "limited to manufacturers and distributors in the business of selling the *product in question*."  (DE 26 at 5 (emphasis in original) (citations and quotation marks omitted).)  However, this does not foreclose the possibility that a parent corporation like Johnson & Johnson could be liable for the acts of a subsidiary operating as a manufacturer or distributor.

Typically, a parent corporation is not liable for the acts of its subsidiary. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). However, a parent corporation may be held liable for the acts of its subsidiary in instances where the corporate veil is "pierced." *Id.* at 62. Kentucky courts[2] may pierce the corporate veil under three different approaches: (1) the instrumentality theory, (2) the alter ego theory, and (3) the equity factors formulation. *See Inter-Tel Techs., Inc. v. Linn Station Props., LLC*, 360 S.W.3d 152, 161-65 (Ky. 2012).

Traditionally, a court may pierce the corporate veil under the instrumentality theory if the following three elements exist: "(1) [t]he [subsidiary] was a mere instrumentality of the [parent]; (2) [t]he [parent] exercised control over the [subsidiary] in such a way as to defraud or to harm the plaintiff; and (3) [a] refusal to disregard the corporate entity would subject the plaintiff to unjust loss." *Id.* at 161 (citation and quotation marks omitted). Under the alter ego theory, a court may pierce the corporate veil when "(1) [t]he [subsidiary] is not only influenced by the [parent], but . . . there is such unity of ownership and interest that their separateness has ceased; and (2) [a]n adherence to normal attributes . . . of separate corporate existence would sanction a fraud or promote injustice." *Id.* The instrumentality and alter ego theories are "essentially interchangeable" in that each seeks to resolve (1) whether domination of the subsidiary results in loss of corporate separateness and (2) whether circumstances exist under which "continued recognition of the [subsidiary] would sanction fraud or promote injustice." *Id.* at 165.

In analyzing whether there is a loss of corporate separateness, a court should consider an expansive list of factors, which incorporates the factors from the traditional equity factors formulation. *Id.* These factors include, among others: whether the subsidiary is

---

[2] Parties rely on Kentucky law in their filings. Thus, the Court will apply Kentucky law to the substantive claims without engaging in a choice of law analysis. *Legg v. Chopra*, 286 F.3d 286, 289 (6th Cir. 2002) ("In federal diversity actions, state law governs substantive issues[,] and federal law governs procedural issues.").

undercapitalized; the failure to observe corporate formalities; the commingling of funds between the parent and the subsidiary; whether the parent pays for the subsidiary's expenses or losses; the commonality of directors and officers within the parent and the subsidiary; whether the corporation diverts assets from the subsidiary to itself; whether the subsidiary does any business outside of that with the parent; whether the parent describes the subsidiary as a department or division of the parent; and whether the parent uses the subsidiary's property as its own. *Id.* at 162-64.

Johnson & Johnson is not liable for any claims related to the devices at issue, unless the Court concludes that it must pierce the corporate veil between Johnson & Johnson and Codman. Here, the Court declines to pierce the corporate veil because Mills does not submit any evidence to dispute that Johnson & Johnson does not dominate Codman in a way that results in a loss of corporate separateness between the two entities. Johnson & Johnson and Codman are separate legal entities with separate corporate identities. (French Decl. ¶¶ 10, 15.) Neither acts as a shell corporation of the other. (*Id.* ¶ 15.) Codman is not undercapitalized but rather, is fully capitalized. (*Id.* ¶ 11.) Johnson & Johnson and Codman observe corporate formalities by maintaining separate and independent by-laws, minutes, corporate records, financial records, financial statements, budgets, and bank accounts. (*Id.*) Johnson & Johnson and Codman do not commingle funds, as both corporations are financially independent of one another. (*Id.*) Each entity has its own board of directors and officers. (*Id.* ¶ 10.) Neither entity endeavors to divert assets away from the other for its own benefit. (*Id.* ¶ 14.) Before Integra purchased its neurosurgery product line, Codman did business outside of that with Johnson & Johnson through the independent development, manufacturing, marketing, testing, inspection, distribution, and selling of shunts and valves. (*Id.* ¶ 9.) Johnson & Johnson does not pay for any of Codman's expenses or losses—Johnson & Johnson does not pay for Codman's research, salaries, raw materials, or other operating expenses.

(*Id.* ¶ 11.)  Codman is responsible for its own profits and losses.  (*Id.*)  Codman is not a department or division of Johnson & Johnson.  (*Id.* ¶ 12.)  Johnson & Johnson does not use Codman's property as its own, as both entities own, maintain, and operate their own respective facilities.  (*Id.* ¶ 13.)

Mills argues that she "has not been afforded a reasonable opportunity to obtain substantive discovery" regarding Johnson & Johnson's involvement in designing, manufacturing, and selling the devices at issue.  (DE 27 at 3-4.)  In supporting this argument, Mills mentions Johnson & Johnson's response to her request for the production of all reservations of rights letters and agreements regarding insurance coverage for the events giving rise to her claims.  (*Id.* at 3.)  Johnson & Johnson responded that it did not "design, develop, manufacture, market, distribute or sell" the devices at issue and that the requested documents would include "confidential trade secret or commercial information."  (*See id.* at 3, 9-10.)  Mills does not present any evidence to dispute the corporate separateness between Johnson & Johnson and Codman, nor does she set forth evidence indicating that the continued recognition of Codman as a subsidiary would sanction fraud or promote injustice. Mills simply cites to two cases where she claims that "Johnson & Johnson was found to have tasked its wholly owned subsidiaries . . . with the designing, manufacturing, marketing, and selling of the allegedly fault[y] products at issue."  (*Id.* at 4.)

A motion for summary judgment is premature "if the [non-moving party] is not afforded with sufficient opportunity for discovery."  *Hunter v. Lake Cumberland Reg'l Hosp., LLC*, No. CIV. 11-316-GFVT, 2012 WL 4601717, at *2 (E.D. Ky. Sept. 28, 2012.)  The non-moving party bears the burden of informing the court of her need for additional discovery. *Id.*  This typically requires the non-moving party to file an affidavit or a motion for additional discovery.  *Price v. AgriLogic Ins. Servs., LLC*, 37 F. Supp. 3d 885, 891 (E.D. Ky. 2014) (citing

*Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004)). *But see Hunter*, 2012 WL 4601717, at *2. The non-moving party must articulate what material facts the additional discovery may reveal, why the non-moving party has not already discovered these material facts, and how the material facts bear on the claims at issue. *See Price*, 37 F. Supp. at 891.

The Court cannot find that Johnson & Johnson's motion for summary judgment is premature, as Mills has not adequately carried her burden to inform the Court of her need for additional discovery. At the outset, Mills has not fulfilled the procedural requirement to properly file an affidavit or a motion for additional discovery because she instead raised the issue in a response to a motion. Mills does not articulate what specific material facts that the additional discovery may reveal; she only broadly suggests that through discovery, she may ascertain information about Johnson & Johnson's potential role in designing, manufacturing, and selling the first and second devices. Mills fails to describe how these facts would bear on the claims she has against Johnson & Johnson, as all specific factual allegations against Johnson & Johnson solely relate to its status as the parent to its subsidiary, Codman. (Second Am. Compl. ¶¶ 4-5, 8.) Therefore, as set forth above, Johnson & Johnson is only liable for the claims against it if the corporate veil is pierced. The requested discovery does not bear on any of the factors considered in that inquiry. Mills also apparently suggests that she has not discovered these material facts due to Johnson & Johnson's refusal to produce documents related to insurance coverage for the underlying claims. But based on the arguments presented before it, the Court cannot discern how such information is material to Johnson & Johnson's liability as a parent corporation.

To the extent that Mills cites to facts in other cases that involved Johnson & Johnson operating as a parent corporation, the Court cannot consider such extraneous facts in resolving the instant motion for summary judgment. *McGrath v. Nationwide Mut. Ins. Co.*, 295 F. Supp. 3d 796, 807-08 (S.D. Ohio 2018) ("[A plaintiff] has the obligation to identify

specific facts that are in dispute that would preclude summary judgment in *her* case . . . She cannot discharge this obligation simply by making a general analogy to another case with non-identical (albeit similar) facts.) (emphasis in original) (citations omitted).  Mills does not otherwise submit (or even address) any evidence that demonstrates a lack of corporate separateness between Johnson & Johnson and Codman.  Thus, no genuine dispute exists as to whether Johnson & Johnson and Codman sufficiently operate as separate corporate entities.  Because Mills does not "present some type of evidentiary material in support of [her] position," the Court will not pierce the corporate veil between Johnson & Johnson and Codman.  *Early v. Toyota Motor Corp.*, Civil Action No. 304-45-KKC, 2007 WL 1461047, at *1 (E.D. Ky. May 16, 2007), *aff'd*, 277 F. App'x 581 (6th Cir. 2008).

Accordingly, as a parent corporation, Johnson & Johnson is not liable for Codman's alleged design and manufacturing of the devices at issue.  Thus, the Court grants summary judgment for Johnson & Johnson as to all claims against it.

## C.   Claims Related to the First Device Are Also Untimely

As discussed above, Johnson & Johnson is not liable for Codman's alleged design and manufacturing of the first device.  The claims arising from the first device also fail because those claims are untimely.

Johnson & Johnson contends that the statute of limitations bars Mills' claims related to the first device because it was implanted into Mills' brain on January 7, 2011, and removed on July 9, 2018.  (DE 26 at 6.)  However, Mills did not file her initial complaint until July 25, 2019.  (*Id.*)  Johnson & Johnson references Mills' Second Amended Complaint where she alleges that on July 3, 2018, she attended a "preoperative visit" with her surgeon to replace the first device because its programming was "not working."  (Second Am. Compl. ¶ 27.)  Johnson & Johnson also points to Mills' allegation that she indeed underwent a surgical replacement of the first device on July 9, 2018.  (*Id.* ¶ 31.)  Mills responds that Johnson &

Johnson's claims are "wholly unsupported in the record" because Johnson & Johnson has not attached "a single medical record or other form of documentary evidence" to its motion that would indicate that Mills had knowledge of her claim or of the defectiveness of the first device. (DE 27 at 5.)

Under Kentucky law, the limitations period for personal injury claims set forth in Kentucky Revised Statute ("KRS") § 413.140(1)(a) governs product liability and negligence claims. *See Richardson v. Rose Transp., Inc.*, 617 F. App'x 480, 484 (6th Cir. 2015); *Cutter*, 2020 WL 109809, at *4; *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 60 (Ky. 2010). Pursuant to KRS § 413.140(1)(a), a plaintiff must bring "[a]n action for an injury to the person of the plaintiff" one year after the cause of action accrued. KRS § 413.140(1)(a). "A cause of action ordinarily accrues on the date of an injury even if a plaintiff is not made aware of the extent of her injury until later." *Cutter*, 2020 WL 109809, at *5.

However, courts apply the discovery rule to cases involving allegedly defective implanted products. *Id.* If no material facts are in dispute, the accrual of a claim under the discovery rule is a question of law for the court. *Id.* "[T]he discovery rule provides that a cause of action accrues when the injury is, or should have been, discovered." *McLain v. Dana Corp.*, 16 S.W.3d 320, 326 (Ky. Ct. App. 1999). As stated in *Cutter*,

> The discovery rule stops tolling the statute once the plaintiff knows, either actually or constructively, that the defendant may have caused her injury–definitive knowledge of causation is not needed. Constructive knowledge, through awareness of sufficient critical facts to put the plaintiff on notice, will trigger the statute of limitations period.

2020 WL 109809, at *4. "In the products liability context, a potential plaintiff's awareness of an injury and of the instrumentality causing the injury is enough to trigger the limitations clock and to impose on the plaintiff the duty to discover the responsible parties." *Reese v. Gen. Am. Door Co.*, 6 S.W.3d 380, 383 (Ky. Ct. App. 1998).

Mills' product liability, negligence, and strict liability claims that arise from the first device are subject to the one-year statute of limitations period.[3]  While these claims would ordinarily accrue on the date of Mills' injury—i.e., when the first device was implanted into her brain on January 7, 2011—the discovery rule applies since this case involves an allegedly defective implanted device.

Contrary to Mills' arguments otherwise, the parties do not dispute the relevant dates and events necessary for analyzing the timeliness of her claims.  The Court finds that, at the latest, the discovery rule tolled the statute of limitations until July 9, 2018.  As of that date, Mills had sufficient knowledge of critical facts that would put her on notice that the first device was potentially defective.  Parties do not dispute that after experiencing increasingly worsening symptoms, Mills scheduled an appointment in May 2018 with her surgeon, who suspected that her first device was malfunctioning.  (Second Am. Compl. ¶¶ 18-19.)  Nor do parties dispute that on July 3, 2018, Mills attended a "preoperative visit" with her surgeon to replace the first device because its programming was "not working," and Mills underwent that surgical replacement on July 9, 2018.  (*Id.* ¶¶ 27, 31.)  Thus, at the time of her replacement surgery on July 9, 2018, Mills was aware of her increasingly worsening symptoms and of the first device's role in potentially causing those symptoms.  Since Mills did not file her initial complaint for over one year later on July 25, 2019, the statute of limitations bars Mills' product liability, negligence, and strict liability claims.

A plaintiff must file a complaint for a breach of warranty claim within four years after the cause of action accrued.  KRS § 355.2-725(1).  The "cause of action accrues when the

---

[3] Johnson & Johnson seems to argue that all of Mills' claims relating to the first device are governed by the one-year statute of limitations for personal injury claims.  Johnson & Johnson is mistaken.  That statute of limitations only applies to Mills' negligence, product liability, and strict liability claims.  However, as explained *infra*, the remainder of Mills' claims arising from the first device are still otherwise time-barred.

breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."  KRS §
355.2-725(2).  Therefore, the discovery rule does not apply to breach of warranty claims.
*Winkler v. Bos. Sci. Corp.*, CIVIL ACTION NO.  5:17-274-KKC, 2018 WL 1474067, at *3 (E.D.
Ky. Mar. 26, 2018).  Instead, the cause of action accrues at the time of the device's
implantation.  *Id.*  Therefore, Mills' breach of implied and express warranty claims accrued
when her first device was implanted on January 7, 2011. (Second Am. Compl. ¶ 8.)  Because
Mills did not file her breach of warranty claims until over eight years later, exceeding the
four-year limitations period,  those claims are time-barred.

A plaintiff alleging a violation of the KCPA must bring the action within two years
after the violation occurred.  KRS § 367.220(5).  The discovery rule is inapplicable to claims
brought under the KCPA.  *Cook v. State Farm Mut. Auto. Ins. Co.*, No. 2002-CA-000801-MR,
2004 WL 2011375, at *3-4 (Ky. Ct. App. Sept. 10, 2004).  Accordingly, Mills' KCPA claim
accrued when her first device was implanted on January 7, 2011.  (Second Am. Compl. ¶ 8.)
Mills did not bring her KCPA claim for eight more years, well beyond the two-year limitations
period.  Thus, Mills' KCPA claim is untimely.

As the claims relate to the first device, Mills' product liability, negligence, strict
liability, breach of implied warranty, breach of express warranty, and KCPA claims are time-
barred.  On that basis, the Court therefore also enters summary judgment for Johnson &
Johnson as to these claims.

## D.    Integra Did Not Contractually Assume Codman's Liabilities

In the alternative, Johnson & Johnson argues that it is not liable for Mills' claims
arising from the second device because in 2017, DePuy sold Codman's neurosurgery product
line to Integra, and thus, the sale occurred before the second device was implanted into Mills.
(DE 26 at 2, 6.)  As a result of that sale, Johnson & Johnson contends that "Integra explicitly
assumed all Codman liabilities for lawsuits or claims relating to the design, manufacture,

and sale of the Codman products," including the second device.  (DE 26 at 2.)  In supporting this contention, Johnson & Johnson cites to a statement by its Assistant Corporate Secretary, Tina Snyder French, in her declaration.  (*See* French Decl.)  She states, "Integra explicitly assumed all Codman liabilities for lawsuits or claims relating to the design, manufacture, and sale of the Codman products, agreed to indemnify and hold DePuy Synthes harmless for such liabilities, and agreed to arrange for insurance for such claims." (*Id.* ¶ 7.)

A purchasing corporation is generally not liable for the debts and liabilities of the selling corporation, but the purchaser may be liable if "there is a contractual provision reciting its obligation to assume such liability." *Logsdon v. Sci. Design Co.*, No. 2005-CA-001281-MR, 2006 WL 2380824, at *2 (Ky. Ct. App. Aug. 18, 2006); *see also Pearson ex rel. Trent v. Nat'l Feeding Sys., Inc.*, 90 S.W.3d 46, 49 (Ky. 2002).  However, Johnson & Johnson has not submitted into the record any evidence of a contract that contains a provision reciting Integra's assumption of liability for claims relating to Codman's products.  While Johnson & Johnson states that it attached the relevant asset-purchase agreement to its motion for summary judgment (DE 29 at 4), the record does not indicate that Johnson & Johnson did so, and the record is otherwise devoid of such an agreement.  To extent that it may refer to a contractual provision, French's statement that "Integra explicitly assumed all Codman liabilities for lawsuits or claims relating to . . . Codman products" is inadmissible hearsay. The Court may not consider such a statement in a motion for summary judgment.  *See Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) ("[E]vidence submitted in opposition to a motion for summary judgment must be admissible.  Hearsay evidence . . . must be disregarded.") (citation and quotation marks omitted).  Therefore, the Court cannot grant summary judgment on this ground for Johnson & Johnson as to Mills' claims based on the second device.

Nonetheless, as the Court previously concluded, Johnson & Johnson, as a parent corporation, is not liable for Codman's alleged design and manufacturing of the second device. Therefore, the Court still grants Johnson & Johnson's motion for summary judgment in its entirety.

## IV.    Conclusion

The Court hereby ORDERS as follows:

1.    Defendant Johnson & Johnson's motion for summary judgment (DE 26) is GRANTED;

2.    The claims against Johnson & Johnson are DISMISSED with prejudice; and

3.    Johnson & Johnson is DISMISSED as a party to the action.

Dated March 19, 2021

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY